GERARD FOX LAW P.C.
GERARD P. FOX (SBN 151649)
gfox@gerardfoxlaw.com
BELINDA M. VEGA (SBN 208236)
bvega@gerardfoxlaw.com
MARINA V. BOGORAD (SBN 217524)
mbogorad@gerardfoxlaw.com
LAUREN M. GREENE (SBN 271397)
lgreene@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Tel: (310) 441-0500
Fax: (310) 441-4447

Attorneys for Plaintiff
BRIAN RAUSCH

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN RAUSCH, | ) CASE NO.: CV 15-04212 DSF (AGRx) |
| Plaintiff, | ) The Honorable Dale S. Fischer |
| v. | ) **PLAINTIFF'S MEMORANDUM OF** |
| MALCOM BLAIR, NOLAN MCDONALD, et al., | ) **POINTS AND AUTHORITIES IN** ) **OPPOSITION TO DEFENDANTS'** ) **MOTION TO DISMISS PURSUANT** ) **TO FRCP 12(b)(6)** |
| Defendants. | ) Date:        October 5, 2015 ) Time:        1:30 p.m. ) Courtroom: 840 |

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND................................................ 3

III. ARGUMENT ............................................................................................ 5

    A. Legal Standard ................................................................................. 5

    B. The Issue of HOM's Ownership Cannot Be Resolved on the Pleadings, Dooming Defendants' Motion in Its Entirety ......................................................... 6

    C. Plaintiff Stated a Claim for Intentional Interference with Contract ..................... 11

    D. Plaintiff Stated a Claim for Intentional Interference With Prospective Economic Advantage ......................................................................................... 15

    E. Plaintiff Stated a Claim for Intentional Infliction of Emotional Distress.............. 16

    F. Plaintiff Stated a Claim for Negligent Infliction of Emotional Distress .............. 17

    G. Plaintiff Stated a Claim for Defamation ................................................ 18

    H. Plaintiff Stated a Claim for Declaratory Relief ........................................ 20

    I. The Court Should Grant Plaintiff Leave to Amend Should the Court Find Any Pleading Deficiencies in Plaintiff's Complaint ...................................... 21

IV. CONCLUSION........................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

   300 U.S. 227 (1937) .............................................21

*Ansanelli v. JP Morgan Chase Bank, N.A.*,

   No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) .............18

*Arista Records, LLC v. Doe 3*,

   604 F.3d 110 (2d Cir. 2010) ..................................5

*Asahi Kasei Pharma Corp. v. Actelion Ltd.*,

   222 Cal. App. 4th 945 (2013).................................11, 12

*Auriga Capital Corp. v. Gatz Properties*,

   40 A.3d 839 (Del. Ch.) ......................................10

*Bader v. Anderson*,

   179 Cal. App. 4th 775 (2009).................................10, 14

*Balistreri v. Pacifica Police Dep't*,

   901 F.2d 696 (9th Cir. 1990) ................................23

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544 (2007) .........................................6

*Breier v. Northern California Bowling Proprietors' Ass'n*,

   316 F.2d 787 (9th Cir. 1963) ................................22

*BriteSmile, Inc. v. Discus Dental, Inc.*,

   No. C 02-03220, 2005 WL 3096275 (N.D. Cal. Nov. 18, 2005).........16

*Buckey v. County of Los Angeles*,

   968 F.2d 791 (9th Cir. 1992) ................................6

*Burnett v. Chimney Sweep*,

   123 Cal. App. 4th 1057 (2004)...............................17

*Center for Biological Diversity v. Veneman*,

   394 F.3d 1108 (9th Cir. 2005)................................22, 23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Clark v. Di Carlo*,

    No. CV ED 04-389DSF, 2006 WL 5014568 (C.D. Cal. Feb. 27, 2006) ..........5, 6

*Comm'r of Internal Revenue v. Laughton*,

    113 F.2d 103 (9th Cir. 1940) ...............................................................10

*Cousins v. Lockyer*,

    568 F.3d 1063 (9th Cir. 2009) ...............................................................6

*Dalkilic v. Titan Corp.*,

    516 F. Supp. 2d 1177 (S.D. Cal. 2007) ...............................................17

*Doe v. United States*,

    419 F.3d 1058 (9th Cir. 2005) ...............................................................5

*Employers Ins. of Wausau v. Granite State Ins. Co.*,

    330 F.3d 1214 (9th Cir. 2003) .............................................................15

*Fox v. Hildebrand,*

    No. CV092085DSFVBKX, 2009 WL 1977996 (C.D. Cal. July 1, 2009) ............6

*Gaines v. Waltz*,

    No. D059686, 2013 WL 342556 (Cal. Ct. App. Jan. 30, 2013) .......................15

*Garcia v. Ocwen Loan Servicing, LLC*,

    No. C 10-0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010) .................18

*Griggs v. Pace Am. Group, Inc.*,

    170 F.3d 877 (9th Cir.1999) ...............................................................22

*Grosset v. Wenaas*,

    42 Cal. 4th 1100 (2008) ...............................................................10

*Hailey v. California Physicians' Serv.*,

    158 Cal. App. 4th 452 (2008) .............................................................16

*Hall v. City of Santa Barbara*,

    833 F.2d 1270 (9th Cir. 1986) ...............................................................5

*Harlow v. Fitzgerald*,

    457 U.S. 800 (1982) ...............................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*In re Teleglobe Commc'ns Corp.*,
 493 F.3d 345 (3d Cir. 2007) ................................................................. 10

*Jensen v. Hewlett-Packard Co.*,
 14 Cal. App. 4th 958 (1993) ................................................................. 19

*Jones v. H. F. Ahmanson & Co.*,
 1 Cal. 3d 93 (1969) .............................................................................. 10

*Kaelin v. Globe Commc'ns Corp.*,
 162 F.3d 1036 (9th Cir. 1998) .............................................................. 19

*Kelly v. Blum*,
 Civil Action No. 4516-VCP, 2010 WL 629850 (Del. Ch. Feb. 24, 2010).......... 10

*Kelly v. Gen. Tel. Co.*,
 136 Cal. App. 3d 278 (1982) ................................................................. 16

*Kiseskey v. Carpenters' Trust for So. California*,
 144 Cal. App. 3d 222 (1983) ................................................................. 16

*Kisliuk v. ADT Sec. Servs., Inc.*,
 263 F.R.D. 544 (C.D. Cal. 2008) ........................................................... 5

*Kozlowsky v. Westminster Nat. Bank*,
 6 Cal. App. 3d 593 (1970) ..................................................................... 14

*Kruse v. Bank of Am.*,
 201 Cal. App. 3d 354 (1988) ................................................................. 17

*Lazar v. Superior Court*,
 12 Cal. 4th 631 (1996) .......................................................................... 12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
 416 F.3d 940 (9th Cir. 2005) ................................................................. 6

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).................................... 22, 23

*McDaniel v. Vilsack*,
 947 F. Supp. 2d 24 (D.D.C. 2013) ........................................................ 7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Moss v. U.S. Secret Serv.*,

   572 F.3d 962 (9th Cir. 2009) ...............................................................22

*Noll v. eBay, Inc.*,

   282 F.R.D. 462 (N.D. Cal. 2012) ...........................................................9

*Northstar Fin. Advisors Inc. v. Schwab Investments*,

   779 F.3d 1036 (9th Cir. 2015) ................................................................9

*Nymark v. Heart Fed. Sav. & Loan Assoc.*,

   231 Cal. App. 3d 1089 (1991) ..............................................................18

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*,

   946 F. Supp. 2d 957 (N.D. Cal. 2013)..................................................20

*PM Grp., Inc. v. Stewart*,

   154 Cal. App. 4th 55 (2007) ................................................................11

*Porter v. Jones*,

   319 F.3d 483 (9th Cir. 2003) ..................................................................5

*Ragland v. U.S. Bank Nat. Assn.*,

   209 Cal. App. 4th 182 (2012)...............................................................17

*Resolution Trust Corp. v. BVS Dev., Inc.*,

   42 F.3d 1206 (9th Cir. 1994) ................................................................19

*Ringler Associates Inc. v. Maryland Cas. Co.*,

   80 Cal. App. 4th 1165 (2000) ...............................................................19

*Robinson v. State Farm Ins.*,

   No. C 94 3304 TEH, 1996 WL 31850 (N.D. Cal. Jan. 16, 1996) .......13

*Scheuer v. Rhodes*,

   416 U.S. 232 (1974) ...............................................................................6

*Scottsdale Ins. Co. v. OU Interests, Inc.*,

   No. C 05-313 VRW, 2005 WL 2893865 (N.D. Cal. Nov. 2, 2005)....15

*Seelig v. Infinity Broadcasting Corp.*,

   97 Cal. App. 4th 798 (2002)..................................................................20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Shoemaker v. Myers*,

    52 Cal. 3d 1 (1990) ........................................................................... 15

*SocialApps, LLC v. Zynga, Inc.*,

    No. 4:11-CV-04910 YGR, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012) ............... 7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,

    368 F.3d 1053 (9th Cir. 2004) ........................................................... 22

*Tyler v. Cisneros*,

    136 F.3d 603 (9th Cir. 1998) .............................................................. 6

*United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*,

    766 F.3d 1002 (9th Cir. 2014) ........................................................... 12

*United States v. City of Redwood City*,

    640 F.2d 963 (9th Cir. 1981) .............................................................. 6

*United States v. Gutierrez*,

    415 F. App'x 870 (10th Cir. 2011) ....................................................... 9

*United States v. Nukida*,

    8 F.3d 665 (9th Cir. 1993) ................................................................. 8

*Visto Corp. v. Sproqit Technologies, Inc.*,

    360 F. Supp. 2d 1064 (N.D. Cal. 2005) ............................................... 16

*Wong v. Tai Jing*,

    189 Cal. App. 4th 1354 (2010) .......................................................... 20

*Woods v. Fox Broad. Sub., Inc.*,

    129 Cal. App. 4th 344 (2005) ........................................................... 13

*Yee v. City of Escondido, Cal.*,

    503 U.S. 519 (1992) ......................................................................... 5

**Rules**

Federal Rule of Civil Procedure 15(a)(2) ................................................. 22

Federal Rule of Civil Procedure 8(a) ....................................................... 5

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.     INTRODUCTION

This is yet another attempt by Defendants Malcom Blair ("Blair") and Nolan McDonald ("McDonald," and, collectively with Blair, "Defendants") to have this Court dismiss all of the claims asserted in Plaintiff Brian Rausch ("Plaintiff")'s complaint (the "Complaint").[1]  Having previously brought and lost an anti-SLAPP motion challenging Plaintiff's complaint, Defendants are back before this Court with a litany of arguments that, for the most part, have been recycled from their anti-SLAPP brief.  These "second hand" arguments were not worth resurrecting, and the instant motion should share in the fate of Defendant's previous unsuccessful attempt to have Plaintiff's claims dismissed.

Plaintiff's complaint arises out of events surrounding the sale of House of Moves, Inc. ("HOM"), a groundbreaking motion-capture and animation studio, to Sketchy Studios, LLC ("Sketchy").  Sketchy purchased HOM from Vicon Motion Systems, Inc. ("Vicon") by acquiring Vicon's stake in HOM amounting to 1,000 shares of HOM's stock.  In addition to heading Sketchy, Plaintiff has been serving as the Chief Executive Officer of HOM since 2008. (Compl. at ¶¶ 9 & 25.)  Plaintiff, along with several of HOM's passionate employees, has developed HOM into the powerhouse of groundbreaking technology that it is now.  Plaintiff sought Defendants' investment in Sketchy for purposes of facilitating its purchase of HOM.

The events surrounding the sale of HOM and the resulting rights of the parties involved therein are subject to a related action pending before this Court, wherein Sketchy asserted claims against Defendants' company, Frame Rates, Inc. ("Frame"), including fraud and various declaratory relief claims based on Frame's alleged misrepresentations to Sketchy in connection with the sale transaction.  *See Sketchy Studios, LLC v. Frame Rates, Inc.*, Case No. CV 15-2023 (C.D. Cal.) ("Sketchy Action").[2]  Importantly, while Sketchy

---

[1]     All internal alterations, quotation marks, footnotes and citations herein are omitted and all emphasis is added unless otherwise noted.

[2]     Plaintiff opposes Defendants' request for judicial notice of the pleadings filed in the Sketchy Action, but only to the extent that Defendants attempt to portray Sketchy's allegations in the Sketchy Action as admissions by the Plaintiff here.  Plaintiff and Sketchy enjoy separate legal

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

in the Sketchy Action places Frame's current ownership of HOM at issue, Plaintiff in this action has expressly pled that Defendants' ownership interest is invalid. Given this alleged invalidity, Plaintiff focuses on Defendants' conduct *following the sale transaction* and their attempts to interfere with Plaintiff's role as the CEO of HOM by, among other things, mandating that all checks written by HOM be approved by Blair, causing HOM to lose valuable assets, causing HOM to incur debt, and improperly attempting to remove Plaintiff as HOM's CEO without any authority to do so. (*See* Compl. at ¶¶ 63, 69, 74-76 & 83-85.) The instant action also includes allegations based on an email sent by McDonald on behalf of both Defendants on March 13, 2015, which was directed to several of HOM's key employees and, among other things, purported to disparage Plaintiff's fitness as HOM's CEO. (*See id*. at ¶ 50 & Ex. B.)

This email hit below the proverbial belt: it was outrageous, malicious and patently unnecessary. Mudslinging is no way to do business. Plaintiff suffered extreme mental anguish and anxiety as a result of these unnecessarily malignant and unsubstantiated statements, as well as substantial damage to his professional reputation. After Plaintiff devoted his entire life to building this business for several years, Defendants' statements were especially hurtful and damaging. The combined effect of Defendants' actions wreaked havoc on Plaintiff's professional life and mounted insurmountable obstacles for his daily operations as HOM's CEO.

In response, Defendants argue that they were fully justified in their attempts to ruin Plaintiff's career and everything that he worked for. Their argument is based on the false premise that they head HOM's "parent" company and that position provides them with *carte blanche* to do everything that Plaintiff alleged. Fortunately, this is not the law. Even if Defendants had a majority shareholder interest in HOM (which Plaintiff vehemently disputes), that majority interest not only provides certain rights, but also imposes certain obligations to the Plaintiff as a minority shareholder in the company. In fact, Defendants'

_____

existence, and the latter's allegations cannot be deemed admissions by the former (and vice versa).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

entire motion is a prime example of why the law goes the extra mile to provide every possible protection to a minority shareholder. If it did not, majority shareholders' despotic actions would go unchecked, just as Defendants propose to proceed here.

In any event, Plaintiff contends that Defendants are not majority shareholders in HOM and that they had absolutely no authority to interfere with HOM's business and to disparage Plaintiff's abilities as CEO. Since the complaint's allegations establish that Defendants acted without authority and damaged Plaintiff as a result, Defendants' motion should be denied.

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff will not belabor the underlying facts, which the Court already addressed in the Court's order denying Defendants' anti-SLAPP motion. *See* Dkt. No. 26 (the "Anti-SLAPP Denial"). Suffice it to say that Sketchy's purchase of HOM and Frame's participation therein resulted in some uncertainty as to Frame's and Defendants' resulting rights to control HOM. (*See* Compl. at ¶¶ 23-38.) Furthermore, as a result of certain promises made by Defendants in the course of the sale transaction, Defendants through Frame were contractually bound to provide working capital necessary for HOM to function. (*Id.* at ¶¶ 19-21.) This Court has already determined that Sketchy sufficiently alleged an implied contract to this effect in the Sketchy Action. *See* Sketchy Action, Dkt. No. 31.

Indeed, as part of their negotiations in connection with the underlying purchase transaction, the parties formed an understanding that Defendants, acting through Frame, would provide the necessary capital for the deal in exchange for Plaintiff's know-how and management expertise as the man behind HOM's success and Plaintiff's right of first refusal to purchase HOM. (Compl. at ¶¶ 15-21.) Plaintiff proceeded with these negotiations based on Blair and McDonald's expressed desire to continue HOM as a fully functional and flourishing company with an even more prominent profile in the industry. (*Id.*) In the end, Defendants agreed to invest in the transaction, with an express understanding that they would be required to immediately infuse gap working capital into HOM upon closing. (*Id.* at ¶ 36.) As part and parcel of that agreement, Defendants took upon themselves the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

obligation of immediately capitalizing HOM after the sale and providing working capital of HOM after the deal. (*Id.* at ¶¶ 19, 28-30 & 36.) To the extent any implied agreement regarding contemplated joint ownership was formed between the parties, it included Defendants' agreement that all of the HOM employees would be offered continued employment at HOM, that Plaintiff would remain CEO of HOM and that he – and no one else – would manage the company. (*Id.* at ¶ 31.)

However, shortly after the sale, Defendants did an about-face, refusing to supply the necessary capital, yet claiming that their purported ownership interest in HOM entitled them to unfettered access to HOM's QuickBooks and other day-to-day management information, such as weekly project updates and financial reports, as well as detailed information about HOM's accounts receivable, accounts payable and cash flow. (Compl. at ¶¶ 40-46.) Defendants further demanded for Blair to personally approve every single check written by HOM. (*Id.*) In fact, Blair announced that as the purported owner of HOM he had the right to "direct the course of business as [he] sees fit." (*Id.*) At the same time, Defendants' refusal to provide working capital forced Plaintiff to make loans to HOM to keep it functioning. (*Id.*) Yet Defendants' failure to provide working capital still eventually caused HOM to lose valuable assets. (*Id.*)

On March 6, 2015, apparently in retaliation for Plaintiff's continued resistance to Defendants' newly revealed agenda to render HOM incapable of operating so that its assets, cutting edge technology and contractual relationships could be freely harvested and sold for parts, Defendants purported to fire Plaintiff. (*Id.* at ¶¶ 48-52; *see also* Compl. at Ex. A.) Then on March 13, 2015, Defendants followed up with an email addressed to several of HOM's key employees, which contained disparaging statements contending that Plaintiff is an incompetent CEO. (Compl. at Ex. B.) These statements provided that Rausch, *inter alia*, did not have the business experience necessary to successfully lead HOM and had been "absent from the office for 30% of the time" since the sale transaction (hereinafter, the "Offending Statements"). (*Id.*) The fallout gravely damaged Plaintiff's reputation, interfered with his ability to perform his daily CEO duties, and caused him extreme distress

1 | and anxiety, as well as uncertainty as to Plaintiff's continued status as HOM's CEO,
2 | resulting in loss of compensation and other damages specifically alleged in the complaint.
3 | (Compl. at ¶¶ 53-59.)

4 | **III.   ARGUMENT**

5 | **A. <u>Legal Standard</u>**

6 | "It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed
7 | with disfavor and is rarely granted.'" *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274
8 | (9th Cir. 1986), abrogated on other grounds by *Yee v. City of Escondido, Cal.*, 503 U.S. 519
9 | (1992).  Federal Rule of Civil Procedure 12(b)(6) is read in conjunction with Federal Rule
10 | of Civil Procedure 8(a), which requires only a short and plain statement of the claim
11 | showing that the pleader is entitled to relief.  *See Fed. R. Civ. P.* 8(a)(2) (requiring that a
12 | plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair
13 | notice of what the plaintiff's claim is and the grounds upon which it rests"); *Porter v. Jones*,
14 | 319 F.3d 483, 494 (9th Cir. 2003) ("To survive a motion to dismiss for failure to state a
15 | claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice
16 | pleading requirements of [Federal] Rule [of Civil Procedure] 8(a)(2)."); *Kisliuk v. ADT Sec.*
17 | *Servs., Inc.*, 263 F.R.D. 544, 546 (C.D. Cal. 2008) (Fischer, J.) (under Rule 8, "[s]pecific
18 | facts are not necessary; the statement need only give the defendant fair notice of what the
19 | ... claim is and the grounds upon which it rests").  Additionally, a plaintiff may plead "facts
20 | alleged upon information and belief where the facts are peculiarly within the possession
21 | and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.
22 | 2010).

23 | In evaluating the current motion at bar, this Court must accept as true all facts alleged
24 | in the complaint, as well as any reasonable inferences arising therefrom.  *See Clark v. Di*
25 | *Carlo*, No. CV ED 04-389DSF, 2006 WL 5014568, at *1 (C.D. Cal. Feb. 27, 2006)
26 | (Fischer, J.); *see also Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  Moreover,
27 | this Court is required to construe all facts alleged in the complaint and any reasonable
28 | inferences arising therefrom in the light most favorable to the Plaintiff.  *See Cousins v.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Indeed, Defendants' motion appears to ignore the well-established cannon of construction, requiring the Court at this stage to give the plaintiff the benefit of every inference that reasonably may be drawn from well-pled facts. *See Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998). Furthermore, this Court's consideration of Defendants' motion is strictly limited by the contents of the complaint. *See Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). Dismissal for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The U.S. Supreme Court has stated: "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *accord Fox v. Hildebrand,* No. CV092085DSFVBKX, 2009 WL 1977996, at *1 (C.D. Cal. July 1, 2009) (Fischer, J.). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Clark v. Di Carlo*, No. CV ED 04-389DSF, 2006 WL 5014568, at *1 (C.D. Cal. Feb. 27, 2006) (Fischer, J.) ("Dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory."); *accord Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

**B. The Issue of HOM's Ownership Cannot Be Resolved on the Pleadings, Dooming Defendants' Motion in Its Entirety**

The bulk of Defendants' argument hinges on Defendants' outright delusion that their company is the "sole" shareholder of HOM. (Mot. at 1:4-6 & 15:16-17.) There is no set of facts alleged in this action or in the Sketchy Action that could conceivably give rise to

any inference, let alone a plausible one, that Sketchy ended up without *any* interest in HOM. While the underlying facts show that the parties continued disagreeing as to the exact split in ownership percentages, one thing is clear: they always contemplated *joint* ownership. (*See* Compl. at ¶ 29 (alleging the initial agreement of the ownership split amounting to 60%-40%) & 34 (subsequent negotiations for Frame to own 70% instead of initial 60%); *see also* Sketchy Action, Dkt. No. 32 (Second Amended Complaint ("Sketchy SAC")) at ¶¶ 152-156 (alleging implied agreement endorsed by the Court which provided for joint ownership).)[3] Indeed, Defendants here expressly construe the complaint as "alleg[ing] that all parties intended Plaintiff and Defendant [to] share in the ownership of HOM." (Mot. at 15:21-22; *see also id.*at 15:24-26 ("Plaintiff, through Sketchy, even paid to have a right to own some portion of Dimano (and hence HOM).")

In any event, the Court should decline Defendants' bizarre attempt to parcel out allegations within a given claim for purposes of this Court's decision (Mot. at 9-10). There is no single claim at issue here that would be resolved in its entirety by the Court's determination concerning HOM's ownership. Each claim requires further findings, and, as shown below, none of them would be in favor of Defendants here. As such, this issue is not properly before the Court. *Cf. SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 381216, at *2 (N.D. Cal. Feb. 6, 2012) ("A motion under Rule 12(b)(6) may not be used to challenge only certain allegations within a claim."); *accord McDaniel v. Vilsack*, 947 F. Supp. 2d 24, 26 n.1 (D.D.C. 2013).

Moreover, there are factual issues precluding the requested determination of ownership sought by Defendants here. *See, e.g., United States v. Nukida*, 8 F.3d 665, 672 (9th Cir. 1993) (factual determinations are "inappropriate for resolution on a pretrial

---

[3]    Given these allegations, Defendants' laments that they ended up with "nothing" but an obligation to fund HOM (Mot. at 1:6-10) are specious. Defendants may have ended up with as much as a majority interest in HOM; yet, since they pushed their investment through by making fraudulent representations, Sketchy is entitled to rescind any resulting agreement and refund Defendants' investment, subject to an offset in damages caused by Defendants' fraud and other illegal conduct. *See* Sketchy Action, Dkt. No. 32 at ¶¶ 102, 114 & 124.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

motion"). The complaint here alleges facts showing that Defendants, individually or through Frame, are not owners of HOM, and these allegations are to be taken as true for purposes of this Court's resolution of Defendants' motion. (Compl. at ¶¶ 29, 34, 98-103.) Defendants attempt to venture beyond the four corners of Plaintiff's complaint, arguing that the documents attached to Sketchy's complaint show that Frame owns HOM. (Mot. at 10-12.) However, even assuming that those documents are properly incorporated by reference in Plaintiff's complaint here, Defendants' argument is still unavailing, since, as Sketchy showed in its opposition to Frame's pending motion to dismiss in the Sketchy Action, this issue cannot be resolved on the pleadings alone.

Indeed, at the heart of Defendants' argument here is that Sketchy validly assigned the Stock Purchase Agreement ("SPA") between Sketchy and Vicon to Dimano Corp. ("Dimano"), a paper company controlled by Defendants. (*See* Sketchy SAC at Exhibit A.) The SPA, however, requires "prior written approval" by each party to be validly assigned. (*Id.* at ¶ 11.04.) Moreover, there is an add-on clause possibly limiting Sketchy's right to assign as follows: "provided that Buyer may assign this Agreement to any entity in which Brian Rausch holds a controlling voting interest …." (*Id.*)

Defendants rely exclusively on an email sent by Rausch on October 15, 2014 at 12:56 p.m. that, in response to Vicon's previous email of the same date purportedly consenting to Sketchy's assignment of its interests under the SPA to Dimano, provided: "Confirmed and approved by Sketchy." (Sketchy SAC, Exhibit E at 007-009.) This email however, is simply signed "Brian" and sets no other terms of the purported assignment. (*Id.*) In fact, none of the emails in the chain at issue sets any terms of any such assignment. Based on this email, Defendants claim that a valid assignment of interests under the SPA took place and that "Dimano stood in the shoes of Sketchy". (Mot. at 11:14.) There are, however, a number of factual problems with this contention, first and foremost being whether the parties to the SPA intended the meaning of "written approval" to include email correspondence and whether the statement at issue is sufficient under the SPA to effect the claimed assignment. These issues are further compounded by the ambiguous provision of

- 8 -

the SPA that on its face limits Sketchy's ability to assign its interests only to an entity in which Rausch holds a controlling interest.  There are no allegations in the complaint or the Sketchy SAC that establish that Dimano qualified as such an entity at that point.[4]  In fact, Defendants' own argument here that Dimano is the 100% owner of HOM conclusively establishes that the assignment of the SPA to Dimano would have been precluded by the terms of the SPA itself, since Defendants admit that Rausch does not hold a controlling interest in Dimano.  (Mot. at 12:10-13:13 & 15:18.)  The combined effect of these factual ambiguities require further discovery, precluding resolution on a motion to dismiss.  *See Noll v. eBay, Inc.*, 282 F.R.D. 462, 467 (N.D. Cal. 2012) (denying motion to dismiss: "At this stage, the court cannot decide as a matter of law whether … [certain documents] were incorporated by reference into the contract.  As such, the court cannot determine the scope of the contract between eBay and Plaintiff …."); *accord Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1065 (9th Cir. 2015) ("factual questions of [contractual] intent … are often not appropriate for resolution via motion to dismiss"); *cf. United States v. Gutierrez*, 415 F. App'x 870, 873 (10th Cir. 2011) (referring to the issue of intent as a "quintessential factual question").

As such, the Court cannot, as a matter of law, determine that Dimano is the 100% shareholder of HOM.  Since the entirety of Defendants' motion is based on the faulty foundation that Dimano is a 100% shareholder of HOM, the Court need not even consider Defendants' remaining arguments.  For purposes of Defendants' motion, Dimano cannot be deemed a "parent" to HOM and HOM cannot be viewed as Dimano's "subsidiary;" furthermore, Dimano cannot be even assumed to hold any of HOM's stock, let alone 100% thereof.

In any event, even if Dimano could somehow be viewed as HOM's parent at this

---

[4]   Although Sketchy contends that as a result of Defendant's default, Sketchy obtained controlling interest in Dimano, this did not occur until several months after the purported assignment. (Sketchy SAC at ¶¶ 69-73.) In any event, Frame has disputed that its default resulted in Sketchy's becoming the majority owner of Dimano. *See Sketchy Action*, Dkt. No. 21 at 18-20.

stage of the proceedings, this finding would still fall short of providing Defendants with a "get-out-of-jail-free" card for the wrongful actions alleged in Plaintiff's complaint. Shareholders are not entitled to control the company in which they hold shares. Indeed, "[i]t is a fundamental principle of corporate governance that the role of managing the business of the corporation is vested in its board of directors, not in its shareholders." *Bader v. Anderson*, 179 Cal. App. 4th 775, 787 (2009); *see also Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008); *Comm'r of Internal Revenue v. Laughton*, 113 F.2d 103, 104-05 (9th Cir. 1940). Defendants' authorities are not to the contrary; rather, they deal with an entirely different question of a parent's liability for the actions of its subsidiary.

Further, with whatever control Dimano may have over HOM, Defendants must use it "to control the corporation in a fair, just, and equitable manner." *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969). Indeed, "[m]ajority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately ***and must not conflict with the proper conduct of the corporation's business***." *Id.*; *cf. In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366-67 (3d Cir. 2007) ("[i]f the subsidiary is not wholly owned, however, in the interest of protecting minority shareholders we revert to requiring that whoever controls the subsidiary ***seek to maximize its economic value with requisite care and loyalty***"); *Auriga Capital Corp. v. Gatz Properties*, 40 A.3d 839, 860-61 (Del. Ch.), judgment entered sub nom. *Auriga Capital Corp. v. Gatz Properties, LLC*, 2012 WL 598121 (Del. Ch. Feb. 23, 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) (fiduciary duties of controlling shareholders include an obligation to "manage ... [the] business loyally for the benefit of the Company's members"); *Kelly v. Blum*, Civil Action No. 4516-VCP, 2010 WL 629850, at *12 (Del. Ch. Feb. 24, 2010) ("fiduciary duties include the duty 'not to cause the corporation to effect a transaction that would benefit the fiduciary at the expense of the minority stockholders'"). As Plaintiff alleges here, Defendants interfered with Plaintiff's performance of his duties as HOM's CEO and HOM's business in general, as well as took countless actions to devalue

and destroy HOM as a going concern. Defendants' purported majority interest does not magically shield them from liability for the wrongful conduct alleged herein. Simply put, even if Dimano was found to be the 100% shareholder of HOM, Plaintiff alleges sufficient facts to proceed to discovery, and Defendants' motion should be denied.

## C. Plaintiff Stated a Claim for Intentional Interference with Contract

Plaintiff's first and second claims for relief assert that Defendants intentionally interfered with Plaintiff's employment contract with HOM and Plaintiff's economic relationship with HOM that was very likely to result in future economic benefit to Plaintiff. As alleged in the complaint, Defendants' acts of wrongful interference included, *inter alia*, attempting to terminate Plaintiff as HOM's CEO, refusing to provide the working capital required for the HOM to function as a going concern, causing HOM to lose valuable assets, and making untruthful statements about Plaintiff to HOM's employees. (*See* Compl. at ¶¶ 60-72.) This submission provides sufficient facts both to put Defendants on notice of Plaintiff's claims and to support a plausible inference that Defendants intentionally interfered with Plaintiff's employment contract.

In response, Defendants contend that they cannot be liable for interfering with a "related" contract.[5] (Mot. at 14:1-22, citing *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55 (2007).) However, Defendants failed to establish that their performance under the contract with Sketchy was "contemplated" or "necessary" for Plaintiff's *preexisting* employment contract to serve as HOM's CEO. *See Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 965 (2013) (distinguishing *PM Grp.* on this very basis). Defendants' argument that Plaintiff's salary as HOM's CEO purportedly depends on their continued funding of HOM's working capital is neither within the four corners of the complaint nor can be reasonably inferred from the allegations, since at the time Plaintiff entered into his

---

[5]    Defendants' section heading on this point asserts that they are "Parties to the Alleged Employment Agreement." (Mot. at 14:1.) However, Defendants offer no explanation or argument explaining exactly how they are parties to Rausch's employment agreement with HOM and there are no allegations supporting this contention.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

employment contract with HOM, Defendants' existence or their future funding obligations were not within the parties' contemplations or necessary for Plaintiff's employment. Nor do the allegations give rise to a reasonable inference that Defendants' funding obligations are the sole source of Plaintiff's continued employment – indeed, even though Defendants breached their funding obligations, Plaintiff still continues to serve as HOM's CEO.[6]

Next, Defendants assert the so-called "financial interest" privilege, claiming that solely because they are the 100% owner of HOM – which Plaintiff disputes – the above-described acts of interference are not actionable. (Mot. at 14-15.) However, "California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014). As the *United* court observed, "[t]o shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract. A party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability. This result is particularly perverse as it is those parties with some type of economic interest in a contract whom would have the greatest incentive to interfere with it." *Id.* at 1007; *accord Asahi*, 222 Cal. App. 4th 963-65 ("[T]he California courts have not recognized a corporate owner's absolute privilege to interfere with its subsidiary's contract. … To the extent … [another decision] implicitly holds that the owners of a business entity are automatically deemed to be exempt from interference liability because their economic interest means they are not 'strangers,' we disagree."); *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 352-53 (2005) (rejecting the so-called financial interest "immunity of someone who was not a party to the contract" and declining to stretch the precedent "so far that it … protects a defendant

---

[6]     Defendants also contend that Frame's duty to fund arose from an implied contract. (Mot. at 17:5-15.) It is unclear how this ties into the claims at issue here, except that Defendants appear to suggest that their contractual breach should not be prosecuted as a tort. It is well-recognized, however, that a breach of contractual duty may give rise to an independent tort cause of action. *See, e.g., Lazar v. Superior Court*, 12 Cal. 4th 631, 649 (1996).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

who has no more than an economic interest or connection to the plaintiff's contract with some other entity …. [W]e find it highly unlikely that … [the precedent] intended to hold, or should be construed as holding, that persons or entities with an ownership interest in a corporation are automatically immune from liability for interfering with their corporation's contractual obligations.").

Even further, if any such privilege applies here, Plaintiff's complaint shows that Defendants' means employed to protect any such purported interest were not reasonable, thus defeating the privilege. *See Woods,* 129 Cal. App. 4th 344, 351 n.7 ("The existence of that [financial interest] privilege depends on whether the defendant used improper means …."). In fact, Defendants do not (and cannot) argue that "the means employed to protect the interest were proper." *Robinson v. State Farm Ins.*, No. C 94 3304 TEH, 1996 WL 31850, at *3 (N.D. Cal. Jan. 16, 1996). Indeed, just like Defendants in this case, defendant in *Robinson* allegedly defamed plaintiff by "falsely portray[ing] Robinson as unqualified and dishonest." *Id.* In response to defendant's assertion of the "financial interest" privilege, the court expressly held that "[a] reasonable jury could find that these representations are improper, which would undermine claims of privilege. Because Defendant fails to show that a reasonable jury could only find in its favor, a genuine issue of material fact exists on the issue of whether Defendant's actions fell within the scope of the privilege defense." *Id.* Similarly here, Plaintiff's complaint supports a reasonable inference that Defendants' actions were unreasonable, destroying any application of privilege.

Finally, even if the privilege properly applied, Defendants' purported status as majority shareholders of HOM did not give Defendants free reign to engage into the wrongful conduct alleged in the complaint. As discussed above, shareholders are not entitled to manage the company in which they hold shares. *See Bader*, 179 Cal. App. 4th at 787. Further, this alleged manager's privilege has been effectively rebutted by Plaintiff's allegations that are taken as true for purposes of Defendants' motion. *See Kozlowsky v. Westminster Nat. Bank*, 6 Cal. App. 3d 593, 600 (1970). In *Kozlowsky*, the court analyzed the manager's privilege in a similar factual situation, as the plaintiff alleged that the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

defendant interfered with plaintiff's employment as the president of a bank. *Id*. at 598. The defendant owned and controlled a majority of the sock in the bank and moved to dismiss plaintiff's complaint alleging that his alleged actions of interference were privileged under the so-called manager's privilege. *Id*. at 598-600. The court, after observing that the management powers were vested in the board of directors by a special banking statute, also determined that the complaint did not include any allegations "that [defendant] is the general manager, or that he was otherwise authorized to act on behalf of the Bank in discharging its president." *Id.* at 600. The court further observed that:

> We recognize that a majority stockholder has an important interest in the bank, justifying the expression of his views to the directors in matters affecting the bank's well being and his own as a stockholder. But the board of directors has responsibilities to persons other than the holder of the majority voting power. We cannot say, as a matter of law, that, by virtue of Caspers' position as majority stockholder and director, his interference with the business relationships of the Bank would be, under all conceivable circumstances, privileged.

> ***

> In the case at bench the complaint does not allege any of the circumstances surrounding Caspers' action except to say that he acted "wantonly, maliciously and without justification." Such an allegation imports that defendant was not acting for the protection of his legitimate interests as a shareholder.

*Id*. at 600. The same reasoning applies here. Plaintiff's complaint alleges that Defendants have no valid ownership interest in HOM and that Defendants' conduct was "malicious, intentional, and outrageous and constituted willful and wonton disregard for the rights of Plaintiff." (Compl. at ¶¶ 66 & 72.) These allegations, taken as true, import that Defendants were not acting to protect any potential legitimate interest as purported shareholders in HOM. Thus, the so-called manager's privilege does not apply, and Defendants' motion should be denied. *See also* Anti-SLAPP Denial at 8 (finding that Defendants' claimed privilege "to further their financial interests" could not be substantiated on the face of Plaintiff's complaint because Plaintiff can prove "actual malice by showing that the email

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

was 'motivated by hatred or ill will' or that Defendants 'lacked reasonable grounds for belied in [its] truth'").

### D. **Plaintiff Stated a Claim for Intentional Interference With Prospective Economic Advantage**

Plaintiff also stated sufficient facts to support his claim for intentional interference with prospective economic advance. (Compl. at ¶¶ 67-72.) Defendants' argument that the claim cannot proceed because Plaintiff "can point to no allegation of wrongful conduct that amounts to an illegality" (Mot. at 18:1-2) overstates the standard.[7] All Plaintiff is required to show is independently wrongful conduct, which Plaintiff did here by alleging that Defendants, among other things, made "disparaging comments about Plaintiff's ability to run HOM directly to HOM's employees." (Compl. at ¶ 72.) This conduct forms the bases of Plaintiff's defamation claim and is clearly independently wrongful. *See Visto Corp. v. Sproqit Technologies, Inc.*, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (Sproqit had adequately alleged the element of independently wrongful conduct "because it has alleged that its allegations of patent infringement by Sproqit were unsupported or false"); *BriteSmile, Inc. v. Discus Dental, Inc.*, No. C 02-03220, 2005 WL 3096275, at *5 (N.D. Cal. Nov. 18, 2005) (claim for tortious interference permitted when claim was based on, among other things, "BriteSmile's alleged false and misleading cease and desist letters").

---

[7]     Defendants' reliance on *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990), for the proposition that Plaintiff's claim for intentional interference with prospective economic advantage is no different than a claim for inducement of breach of employment contract misses the point entirely. The problem in *Shoemaker* was that the claim was asserted against the employer's agents; since they acted on employer's behalf, the claim was barred by the concept that one cannot interfere with his own contract. *See Gaines v. Waltz*, No. D059686, 2013 WL 342556, at *8 (Cal. Ct. App. Jan. 30, 2013) (explaining the distinction); *cf. Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) ("Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority.") (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).
If Defendants are claiming that they acted as HOM's agents here, there is no support for this position in Plaintiff's allegations, thus dooming this argument for purposes of Defendants' motion.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   Therefore, Plaintiff has alleged sufficient facts to support his intentional interference with
2   prospective economic advantage claim.

3             **E.**  **Plaintiff Stated a Claim for Intentional Infliction of Emotional Distress**

4             Plaintiff's third and fourth claims for relief are for intentional and negligent infliction
5   of emotional distress.  (*See* Compl. at ¶¶ 73-89.)  Defendants contend that the alleged
6   conduct does not rise to the level of extreme and outrageous conduct sufficient to support
7   Plaintiff's emotional distress claims as a matter of law.  (*See* Mot. at 18-19.)  However,
8   "[b]ehavior may be considered outrageous if a defendant … abuses a relation or position
9   which gives him power to damage the plaintiff's interest."  *Hailey v. California Physicians'*
10  *Serv.*, 158 Cal. App. 4th 452, 474 (2008); *see also Kelly v. Gen. Tel. Co.*, 136 Cal. App. 3d
11  278, 287 (1982) (holding that "the spreading of deliberately false statements that a former
12  employee in effect committed forgery is extreme and outrageous conduct," especially given
13  defendant's position of power and employment of that position to spread false statements;
14  "As our Supreme Court has stated, abuse of a position that gives one the power to damage
15  a plaintiff's interest is outrageous conduct.").  Defendants' claimed controlling ownership
16  interest supplied precisely the position of power that, at the very least, qualifies their attempt
17  to strip Plaintiff of his CEO duties and their Offending Statements about Plaintiff as extreme
18  and outrageous conduct.  This is especially so, given that "outrageousness" of the conduct
19  at issue is a factual issue better left to the jury to resolve.  *See Kiseskey v. Carpenters' Trust*
20  *for So. California*, 144 Cal. App. 3d 222, 232 (1983) ("While it may subsequently be
21  determined that the effect of defendants' conduct became sufficiently severe …, that is a
22  question of fact for the trier of fact, not for determination at the demurrer stage, where the
23  facts alleged must be taken as true for the purpose of ruling on the demurrer"); *see also*
24  *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1188 (S.D. Cal. 2007) ("The Court, therefore,
25  finds that it cannot determine as a matter of law that Defendants' conduct fails to rise to a
26  threshold level, and that a trier of fact, not this Court, must determine whether Defendants'
27  conduct would rise to a level that is actionable under California's IIED laws."); *accord*
28  *Burnett v. Chimney Sweep*, 123 Cal. App. 4th 1057, 1069 (2004).  As such, Plaintiff alleges

1  sufficient facts to establish the severe emotional toll that Defendants' conduct affected on

2  Plaintiff.

3      Yet again, Defendants reassert their "financial interest" privilege, which fails here

4  for the same reasons as discussed above.  Indeed, Defendants' pursuit of their interest

5  involved spreading falsities about Plaintiff and other wrongful conduct detailed in the

6  complaint.  As Defendants' own authority states while analyzing the privilege's application

7  to plaintiff's emotional distress claims, "[o]f course, the Bank's actions in its own interest

8  are circumscribed in scope and may not be undertaken in an impermissible manner." *Kruse*

9  *v. Bank of Am.*, 201 Cal. App. 3d 354, 67 (1988).

10      **F.  Plaintiff Stated a Claim for Negligent Infliction of Emotional Distress**

11      Defendants' contention that Plaintiff cannot recover for negligent infliction of

12  emotional distress because his injury is purely economic (Mot. at 20:9-28) downplays the

13  special relationship exception to the rule.  *See Ragland v. U.S. Bank Nat. Assn.*, 209 Cal.

14  App. 4th 182, 203-04 (2012) ("[R]ecovery for emotional distress caused by injury to

15  property is permitted only where there is a preexisting relationship between the parties or

16  an intentional tort.")   Although Defendants acknowledge that Plaintiff alleged an

17  investor/lender relationship to support his claim, Defendants quickly jump to conclude that

18  because the underlying conduct resulted only in economic loss, Plaintiff cannot proceed

19  any further.  This is ignores the established precedent showing that where a lender such as

20  Defendants here become involved in the financed enterprise beyond the conventional scope

21  of a simple lending transaction, a duty of care arises that supports recovery of emotional

22  distress damages.  *See Ansanelli v. JP Morgan Chase Bank, N.A.,* No. C 10-03892 WHA,

23  2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (where plaintiff showed that lender's

24  "involvement in the loan transaction … exceed[ed] the scope of its conventional role as a

25  mere lender of money," motion to dismiss was denied because "[p]laintiffs' allegations

26  constitute sufficient active participation to create a duty of care to plaintiffs to support a

27  claim for negligence"), citing *Nymark v. Heart Fed. Sav. & Loan Assoc.*, 231 Cal. App. 3d

28  1089, 1096 (1991).

- 17 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The allegations here establish that the parties contemplated joint ownership of HOM, and that Defendants attempted to become involved in HOM's business much more extensively than any traditional lender would, demanding continuous access to HOM's financial records and insisting that all HOM's expenses were to be cleared by them. Having taken themselves out of the normal lender role, Defendants owed Plaintiff a special duty of care.

Moreover, there are factual issues here that preclude resolution of the issue of duty at this stage of the proceedings for at least two reasons. *First*, any determination of whether a duty of care should arise involves a balancing of factors that, given Plaintiff's allegations here, cannot foreclose a duty owed to him by Defendants as a matter of law. *See Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010) (applying the following factors to the alleged lender-borrower relationship: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm;" concluding that the balance of factors was not clear on the pleadings and thus allowed plaintiff's negligence claim to proceed). *Second,* since this Court has endorsed the implied contract claim pending in the Sketchy Action, there is a possibility that the parties jointly own HOM as a result of forming the implied contract in question, which would mean that Defendants owe Plaintiff a special duty of care arising from the joint ownership relationship. *See Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, ***excepting those imposed due to special circumstance or a finding that a joint venture exists***."). Either way, Defendants' motion on this claim is clearly premature and should be denied.

### G.     Plaintiff Stated a Claim for Defamation

Plaintiff's fifth claim for relief is for defamation based on Defendants' Offending

Statements.  (*See* Compl. at ¶¶ 90-97.)  As shown in the complaint, Defendants' Offending Statements were false and damaging to Plaintiff's reputation.  *Cf.* Anti-SLAPP Denial at 7, citing *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1180 (2000) (for defamation, plaintiff needs to show that Defendants engaged into:  "[1] the intentional publication of a statement of fact which [2] is false, [3] unprivileged, and [4] has a natural tendency to injure or which causes special damage").  In California, "[s]o long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  Defendants bolster the majority of their argument as to Plaintiff's defamation claim on the *Jensen* case. (Mot. at 21-22, citing *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958 (1993).)  However, *Jensen* does not control here.  In *Jensen* the plaintiff was an employee who received a negative performance review from his employer which was placed in to his personnel file. *Jensen*, 14 Cal. App. 4th at 963-964.  Thus, the "the primary recipient and beneficiary of the communication … [was] the employee." *Id* at 964.  That is the exact opposite from the situation here.  Here, Defendants' Offending Statements were not a performance evaluation by any stretch of the imagination.  A "performance review is a vehicle for informing the employee of what management expects, how the employee measures up, and what he or she needs to do to obtain wage increases, promotions or other recognition." *Id*.  Instead, Defendants blatantly maligned Plaintiff's ability and skill to manage HOM.[8]  Worse, this was not a communication made just to the Plaintiff and Plaintiff's personnel file; rather, Defendants sent these Offending Statements to several key HOM employees.  Thus, Defendants cannot skirt liability for their defamatory Offending Statements by conjuring some nonexistent performance evaluation.  There is simply no support for this position in Plaintiff's allegations.

---

[8]     In fact, Defendants' own quotation from *Jensen* shows on its face that their statements are actionable, since, even for purposes of a performance evaluation, *Jensen* expressly approves of libel claims based on an employer's statements that "falsely accuse[] an employee of … *incompetence* …." (Mot. at 21:12-15.)  That was precisely what the Offending Statements did here.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants further contend that the Offending Statements did not contain a false statement of fact.  While the First Amendment precludes expressions of an opinion from constituting actionable defamation, "a plaintiff may state a defamation claim that survives First Amendment challenge by presenting evidence of a statement of fact that is provably false."  *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015); *Seelig v. Infinity Broadcasting Corp.,* 97 Cal. App. 4th 798, 809 (2002).  Indeed, "[t]he critical question is not whether a statement is fact or opinion, but whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Piping Rock*, 946 F. Supp. 2d at 971; *see also Wong v. Tai Jing,* 189 Cal. App. 4th 1354, 1370 (2010).  Here, Defendants' Offending Statements include a provably false assertion of fact; namely, that Plaintiff is not fit to run HOM based on his alleged inexperience and excessive absenteeism.  (Compl. at Ex. B.)  *Cf.* Anti-SLAPP Denial at 5 (summarizing Plaintiff's allegations to convey the same assertions).  These are statements of facts that are capable of being proved wrong, as the Court expressly found in its order denying Defendants' anti-SLAPP motion.  *See id.* at 7 (discussing Plaintiff's evidence submitted in support of Plaintiff's anti-SLAPP opposition and finding that the evidence was sufficient to disprove the Offending Statements' accuracy for purposes of Defendants' anti-SLAPP motion).  Thus, Plaintiff has properly stated a claim for defamation.

### H. Plaintiff Stated a Claim for Declaratory Relief

Declaratory judgment is appropriate where there exists a controversy that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937) ("It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").  Here, Defendants' own motion speaks for itself to show the definite and concrete controversy between Plaintiff and Defendants.

Just as much of the rest of Defendants' motion, Defendants' argument against

Plaintiff's declaratory judgment claim relies entirely on Defendants' assertion that they are 100% owners of HOM.  (*See* Mot. at 22-23.)  As discussed in detail above, there are no facts in the complaint or any attachment thereto that could give rise to any inference that Defendants are the 100% shareholders in HOM.  Therefore, as the authorities discussed above further show, Plaintiff has alleged that Defendants did not have any authority to fire Rausch.  Further, Defendants' "no-harm-no-foul" argument that "Defendants … at most, attempted to suspend Plaintiff's executive powers until further discussion" but were unable to do so (Mot. at 23:6-7) is disingenuous and does not eradicate the controversy between the parties, since Plaintiff alleged that this conduct interfered with his daily operations of HOM and caused wide-ranging disruption of the business.  Furthermore, since Defendants continue claiming ownership interest in HOM, there remains a live controversy as to whether Plaintiff's continued performance as HOM's CEO is proper, since, as far as Defendants are concerned, their last word on the matter was: "you are no longer authorized to act or hold yourself at [sic] the CEO of HOM."  (Compl., Ex. A at p.2 (also referring to Plaintiff as the "former CEO of HOM").)  Unless Defendants stipulate that their purported termination of Plaintiff had no legal effect, Plaintiff's declaratory judgment claim should proceed.

## I. The Court Should Grant Plaintiff Leave to Amend Should the Court Find Any Pleading Deficiencies in Plaintiff's Complaint

As discussed above, Plaintiff's complaint provides a statement of the claims that sufficiently provides Defendant with fair notice of Plaintiff's claims and the grounds upon which they rest.  However, if for any reason this Court detects any further pleading deficiencies in Plaintiff's complaint, Plaintiff should be granted another leave to amend.

"Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'"  *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963).  Such leave is freely and liberally granted as a matter of judicial policy.  *See Fed. R. Civ. P.* 15(a)(2); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever 'justice so requires,' and

requests for leave should be granted with 'extreme liberality.'").  The Ninth Circuit has repeatedly held that liberal leave to amend a pleading should be granted by a district court even if no request to amend the pleading was made.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  Furthermore, dismissal of a complaint without leave to amend "is improper unless it is clear … that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *see also Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005) (remanding the case with instructions to permit plaintiff to amend its complaint since "[i]n sum, it is not clear **beyond doubt** that amendment of the complaint would be futile").  In fact, judicial authority and policy weighs so heavily in favor of freely and liberally granting leave to amend that inferences should be drawn by the court from a plaintiff's pleading in favor of granting leave to amend a pleading.  *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (determining that even though plaintiff's previous amended complaints might have been filed in bad faith, since there was no evidence in the record that his subsequent amended complaint would have been filed in bad faith, even if the district court's decision was based on a finding that plaintiff's previous filings were made in bad faith, amendment still should have been permitted).  Therefore, there can be no debate that "[t]he standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (finding that since the court could "conceive of facts" that would render an equal protection cause of action viable, even though the plaintiff only pled an *inference* of an equal protection cause of action and not a sufficient cause of action, it would nonetheless be an abuse of discretion to deny leave to amend because a court could still "discern from the record no reason why leave to amend should be denied").

Furthermore, this is the *first* hearing on the merits of Plaintiff's pleading, since Defendants' previous anti-SLAPP motion applied a different standard of review.  In *Lopez*, the magistrate judge allowed the plaintiff to amend his complaint once but denied plaintiff's ability to amend his complaint a second time.  *Lopez*, 203 F.3d at 1131.  Despite having

- 22 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

provided the plaintiff an opportunity to amend his complaint after a hearing on the merits of the complaint, the Ninth Circuit nonetheless found an abuse of discretion by the magistrate judge for denying leave to amend a second time and remanded the case back to the district court with instructions that the plaintiff be given a second opportunity to amend his complaint. *Id.* Here, no prior motion to dismiss Plaintiff's complaint has been heard. Since it is not clear *beyond doubt* that amendment of the complaint would be futile, the Court should permit Plaintiff leave to further amend its complaint should the Court find any additional pleading deficiencies. *See Center for Biological Diversity*, 394 F.3d at 1114.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.

DATED: September 14, 2015                    GERARD FOX LAW P.C.


                                             /s/ Marina V. Bogorad
                                             MARINA V. BOGORAD
                                             Attorneys for Plaintiff

**PROOF OF SERVICE**

    I, Dimiana Saad, am employed in the County of Los Angeles, in the State of California. I am over the age of 18 and not a party to the above referenced matter. My business address is:1880 Century Park East, Suite 1410, Los Angeles, CA 90067.

On September 14, 2015, I served the following document entitled:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

on the person(s) listed in the attached Service List. The documents were served by the following means:

| | |
|---|---|
| ☐ | **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collections and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business. |
| ☐ | **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid. |
| ☐ | **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid. |
| ☐ | **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list. |
| ☒ | **FEDERAL EXPRESS:** By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express of delivered to a Federal Express courier, at Los Angeles, California. |
| ☐ | **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list. |
| ☐ | **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error. |
| ☐ | **By CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties. |

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September 14, 2015

_____
Dimiana Saad

1

## **Service List**

2

| | |
|---|---|
| Bruce A. Berman<br>Goodstein & Berman LLP<br>523 W. 6th Street, Ste. 1228<br>Los Angeles, CA 90014<br>Ph:   213.683.1908<br>Fax: 213.683.4882<br>bruce@goodsteinbermanlaw.com | Attorneys for Defendants<br>MALCOLM BLAIR & NOLAN<br>MCDONALD |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28